UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER SCHALL,

       Plaintiff,

                                         Case No. 13-13517
v.                                         Hon. Gerald E. Rosen

GPP, INC.,

       Defendant.
_____/

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       August 15, 2014

PRESENT:  Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Christopher Schall commenced this action in this Court on August 15, 2013, seeking a declaration that he has not violated a "Restrictive Practices Agreement" ("RPA") that he entered into with his former employer, Defendant GPP, Inc., and also asserting state-law claims of defamation and tortious interference against Defendant GPP arising out of this company's allegedly false and defamatory communications to Plaintiff's current employer, Crypton Fabric, LLC. The Court's subject matter jurisdiction rests upon the parties' diverse citizenship. *See* 28 U.S.C. § 1332(a).

On August 30, 2013 — just over two weeks after Plaintiff filed this suit —

Defendant brought an action against Plaintiff in the U.S. District Court for the Western District of Pennsylvania, alleging that Plaintiff had breached the same RPA giving rise to Plaintiff's claims for declaratory and injunctive relief before this Court.  The parties agree that this case and the Pennsylvania suit implicate many of the same issues and arise from the same underlying facts and circumstances — most notably, Plaintiff's decision to leave Defendant's employ and begin working for Crypton Fabric.

Through the present motion filed on September 24, 2013, Defendant requests that the Court dismiss this suit as "an improper and anticipatory action," (Defendant's Motion at 1), or, alternatively, that this action be transferred to the Western District of Pennsylvania, where it presumably would be consolidated with the suit brought by Defendant.  In support of this motion, Defendant recognizes that the so-called "first-to-file" rule ordinarily would dictate that Plaintiff's earlier-filed action be permitted to go forward, but it contends that the "anticipatory" suit purportedly brought by Plaintiff here should trigger an exception to this rule, where Plaintiff allegedly "raced to the courthouse" while the parties were still engaged in settlement negotiations.  In response, Plaintiff argues that none of the circumstances surrounding his commencement of this litigation remove this case from the ambit of the first-to-file rule, so that this ordinary rule should govern here.[1]

---

[1] Apart from responding in opposition to Defendant's motion, Plaintiff has filed a separate motion requesting that the Court enjoin Defendant from going forward with the parallel suit it commenced in the Western District of Pennsylvania.  Because the Pennsylvania district court has issued an order granting Plaintiff's request that the Pennsylvania litigation be stayed pending this

Defendant's motion has been fully briefed by the parties. Having reviewed the parties' briefs in support of and opposition to Defendant's motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are adequately presented in these written submissions, and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

According to the complaint, Plaintiff Christopher Schall was hired by Defendant GPP, Inc. in February of 2006. In connection with this hiring, the parties executed a "Restrictive Practices Agreement" ("RPA"), under which Plaintiff agreed not to "directly or indirectly" contact any current or potential customer of Defendant for a period of two years after the termination of his employment with Defendant "for the purpose of introducing, offering, or selling to such [current or potential customer] any products or services that compete with the products and services offered by" Defendant. (Defendant's Motion, Ex. A, Restrictive Practices Agreement at ¶ 3.)

In January of 2013, Plaintiff resigned from his position with Defendant and accepted employment with Crypton Fabric, LLC ("Crypton"). According to the

---

Court's resolution of Defendant's motion, the Court views Plaintiff's motion as moot.

complaint, both Defendant and Crypton have relationships with Guardian Protection Products, Inc. ("Guardian"), a company that manufactures furniture protection products. Plaintiff alleges in his complaint that he gave advance notice to Defendant that he intended to begin working for Crypton after he left Defendant's employ, and that, notwithstanding Defendant's "extensive knowledge regarding the type and scope of business performed by Crypton," Defendant "gave [him] permission" to accept a position with Crypton. (Complaint at ¶¶ 16-21.)[2]

On May 28, 2013, counsel for Defendant sent a "cease and desist" letter to Plaintiff and his current employer, Crypton, charging that Plaintiff had violated the terms of the RPA by divulging confidential information and "engag[ing] in competitive conduct" with Defendant. (Defendant's Motion, Ex. B, 5/28/2013 Letter at 1.) Defendant demanded that Plaintiff "immediately cease and desist from any further violation of" the RPA, and warned Plaintiff that "a legal action will be commenced against you seeking both injunctive relief and compensatory and punitive damages." (*Id.*) Finally, the letter stated that if Plaintiff "would like to avoid" this threatened suit, he or

---

[2]Defendant disputes these allegations in its motion, asserting that Plaintiff assured the company upon his resignation that his position with Crypton would not entail any competition with Defendant. (Defendant's Motion, Br. in Support at 4.) Defendant further states that since Plaintiff left Defendant's employ and began working for Crypton, Defendant has learned that Plaintiff "is taking actions in violation of the [RPA] and has disparaged" Defendant. (*Id.* at 4-5.) Notably, however, Defendant fails to identify any support in the record for these assertions, but instead offers only the bare statements of its counsel in the brief in support of its motion. *See United States v. Webb,* 616 F.3d 605, 610 (6th Cir. 2010) (observing that the assertions of a party's counsel are "not evidence").

his attorney "should contact [Defendant's counsel] on or before June 1, 2013 in order to enter into a consent judgment and decree." (*Id.*)

Plaintiff's counsel responded to this letter on May 30, 2013, opining that the allegations in Defendant's May 28 letter were "completely without merit," and asserting that "[a]s a Crypton employee, [Plaintiff] has conducted himself in full compliance with the RPA and has not contacted or solicited any GPP customer or prospect for the purpose of selling competing products or services." (Defendant's Motion, Ex. C, 5/30/2013 Letter at 1.) Plaintiff's counsel further stated that if Defendant could provide "some specifics as to any of the allegations contained in [the May 28] letter," he would "respond in greater detail," but that he otherwise "assume[d] that this letter resolves the matter in full." (*Id.* at 2.)

Following this initial exchange of letters, the parties and their counsel engaged in a series of discussions and exchanged more correspondence over the next several weeks in an effort to resolve the parties' differences without resort to litigation. On July 18, 2013, for example, Defendant's counsel sent Plaintiff's attorney a draft settlement agreement and asked him to review it with his client. (*See* Defendant's Motion, Ex. G, 7/18/2013 Letter.) Plaintiff's counsel, in turn, sent a revised settlement agreement to Defendant's attorney on July 26, 2013. (*See* Defendant's Motion, Ex. H, 7/26/2013 E-mail.) On August 13, 2013, Defendant's counsel stated in an e-mail that the most recent settlement offer made by counsel for Plaintiff's employer, Crypton, was "not acceptable and is a

non-starter,"[3] and he tendered a "revised settlement proposal that now only pertains to [Plaintiff]," and not Crypton. (Defendant's Motion, Ex. J, 8/13/2013 E-mail.)[4]

On August 16, 2013, Plaintiff's counsel advised Defendant and its counsel in an e-mail that Plaintiff had commenced the present action in this Court, but she indicated that her client remained interested in pursuing a settlement with Defendant:

> Our client's interest in signing a settlement with GPP is to continue his employment at Crypton in peace. Our client dutifully gave GPP advance notice of his intentions to work at Crypton, and GPP gave its blessing. Our client has acted with professionalism and respect toward GPP (and its proprietary information) both in his departure and his present employment. We are willing to be flexible on other settlement terms — for example, offering GPP a mutual release of claims — if GPP will honor a 'safe harbor' for our client's employment at Crypton.
>
> As GPP's actions are disrupting our client's performance of his job duties, we have filed a Complaint in the Eastern District of Michigan seeking nullification of the RPA, and seeking damages for defamation and tortious interference. If GPP would like to work on a mutually agreeable resolution, we will hold off on service of the Complaint.

---

[3] Earlier in August, Crypton's attorney advised counsel for Defendant that Plaintiff had retained his own counsel, so that the attorney who previously was representing both Crypton and Plaintiff was now representing only Crypton. (*See* Defendant's Motion, Ex. I, 8/6/2013 Letter.)

[4] Defendant asserts in its present motion that just before this August 13, 2013 e-mail was sent, counsel for the parties participated in a telephone conference at which "counsel for GPP stated that if the parties' positions were polar opposites, GPP would file suit in Pennsylvania," and Plaintiff's attorney "responded by stating that [Plaintiff] would like to continue settlement negotiations, discussed ideas for a potential middle ground, and requested that GPP send a settlement proposal to [Plaintiff]." (Defendant's Motion, Br. in Support at 6.) In response to this request, Defendant's counsel sent the above-cited August 13, 2013 e-mail to Plaintiff's attorney, accompanied by a revised settlement proposal. Although Defendant has not provided any evidence in support of its assertions as to what transpired at this August 13 telephone conference, it has offered to support these statements through the production of a privileged communication for the Court's *in camera* review. (*See id.*)

>     Please advise if we can direct our efforts towards a compromise that
> will allow our client to continue to earn a living for his family at Crypton.

(Defendant's Motion, Ex. K, 8/16/2013 E-mail.)

While the parties continued their settlement discussions, (*see, e.g.,* Defendant's Motion, Ex. L, 8/21/2013 E-mail (enclosing Plaintiff's latest settlement proposal for review by Defendant and its counsel)), these efforts were not fruitful.  Accordingly, Plaintiff served the complaint in the present action on September 3, 2013, and Defendant, in turn, brought suit against Plaintiff on August 30, 2013 in the U.S. District Court for the Western District of Pennsylvania.  As noted earlier, the parties agree that their claims in the two cases involve the same subject matter and arise from the same underlying events and circumstances.

### III.  <u>ANALYSIS</u>

**A.     Defendant Has Failed to Identify a Basis in This Case for Deviating from the Usual "First-to-File" Rule.**

As the principal relief sought in its present motion, Defendant asks that this case be dismissed in favor of the suit it filed in the Western District of Pennsylvania just over two weeks after Plaintiff commenced the present action.  Defendant recognizes that this result would run counter to the so-called "first-to-file" rule, which "provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.,* No. 00-3183,

16 F. App'x 433, 437 (6th Cir. July 31, 2001). Nonetheless, the Sixth Circuit has emphasized that "[d]istrict courts have the discretion to dispense with the first-to-file rule where equity so demands," *Zide Sport Shop,* 16 F. App'x at 437, and Defendant contends that the circumstances here warrant such a deviation from this usual rule. As discussed below, the Court does not agree.

As observed by the Sixth Circuit, "[f]actors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Zide Sport Shop,* 16 F. App'x at 437. In arguing that one or more of these factors are present here, Defendant views the record in this case as disclosing that "Plaintiff rushed to the courthouse while actively encouraging Defendant to withhold filing litigation while the parties[] discussed settlement." (Defendant's Motion, Br. in Support at 11.) Defendant contends that under these or similar facts, the courts have declined to adhere to the first-to-file rule, and have instead found that the first-filed suit should be dismissed as an improper anticipatory filing or as a disfavored attempt at forum shopping.

Upon reviewing the cases identified by Defendant as supporting a departure from the first-to-file rule, the Court concludes that each of these rulings is distinguishable in one or more material respects. In *NSI Corp. v. Showco, Inc.,* 843 F. Supp. 642, 643-44 (D. Or. 1994), for example, counsel for the defendant, Showco, sent a letter to an attorney for the plaintiff, NSI, demanding that NSI cease and desist from using a trademark

Showco had registered with the U.S. Patent and Trademark Office, and NSI's counsel responded by stating that "NSI was investigating the matter" and "inform[ing] Showco that it would be forwarding a settlement proposal." NSI subsequently sent Showco a settlement proposal, but then filed a declaratory judgment action against Showco just "one day after it mailed the settlement offer to Showco." *NSI Corp.,* 843 F. Supp. at 644. Roughly a month later, Showco rejected NSI's settlement offer and brought its own suit in another federal district court.

Against this backdrop, the court agreed with Showco that NSI's suit should be dismissed in favor of the later action brought by Showco. While acknowledging that the winner of a "race to the courthouse" should prevail "where the parties [a]re on equal footing," the court found that Showco had been "led to believe that settlement negotiations were in progress," and thus "did not know that the race to the courthouse had begun." *NSI Corp.,* 843 F. Supp. at 645. The court further reasoned that NSI had "misled Showco into delaying the filing" of its suit, and thereby "took advantage of the fact that Showco had deferred the filing of expensive and probably protracted litigation because of its belief that settlement negotiations were under way." 843 F. Supp. at 645-46. Showco's belief on this point was reasonable, in the court's view, where NSI had proffered a settlement proposal just a day before it filed its action against Showco, and where this proposal was accompanied by a statement from NSI's counsel indicating that "NSI did not intend to file suit . . . until Showco had an opportunity to consider [NSI's]

9

settlement offer." 843 F. Supp. at 646; *see also AmSouth Bank v. Dale,* 386 F.3d 763, 787 (6th Cir. 2004) (suggesting that a district court should be reluctant to entertain a declaratory judgment action brought by a plaintiff who "races to the courthouse while at the same time assuring the [opposing party] that [he] is still interested in at least discussing settlement options"); *Zide Sport Shop,* 16 F. App'x at 438 (affirming the district court's dismissal of a first-filed declaratory judgment action where the plaintiffs filed their suit "the day before a [settlement] negotiation extension period granted to them by the defendants expired," and where "[t]he plaintiffs misled the defendants by going along with written correspondence regarding settlement while, in fact, the plaintiffs had already filed but not served an anticipatory federal action"); *Kmart Corp. v. Key Industries, Inc.,* 877 F. Supp. 1048, 1053 (E.D. Mich. 1994) (characterizing *NSI Corp.* as among a line of cases in which "the plaintiff in the earlier-filed declaratory action misled the defendant into believing that their dispute could be resolved amicably so that the plaintiff could win the race to the courthouse and therefore choose the forum for the dispute").

     Returning to the present case, the Court finds that the record here lacks the evidence of misleading representations regarding settlement that featured in the above-cited decisions departing from the first-to-file rule. Most notably, at the time the present suit was filed on August 15, 2013, there was no outstanding settlement offer from Plaintiff that remained under consideration by Defendant. Rather, Defendant's counsel

10

had stated just two days earlier, on August 13, 2013, that Plaintiff's most recent settlement offer was "not acceptable," (Defendant's Motion, Ex. J, 8/13/2013 E-mail), and this correspondence was accompanied by a "revised" settlement proposal that, according to Plaintiff, incorporated some of the very same terms that Plaintiff had previously rejected as untenable, (*see* Plaintiff's Response Br. at 2, 4 (citing provisions in settlement offers made by Defendant on July 18 and August 13, 2013)).[5] Given this apparent impasse, and given Defendant's repeated threats of litigation in correspondence sent by its counsel to Plaintiff's attorney, (*see, e.g.,* Defendant's Motion, Ex. B, 5/28/2013 Letter at 1; Ex. D, 6/12/2013 Letter at 1; Ex. F, 6/13/2013 Letter at 2), the Court fails to see how Defendant can claim to have been misled into believing that Plaintiff would be content to continue settlement negotiations that had begun more than two months earlier, while leaving it to Defendant to decide when to declare an end to these negotiations and instead resort to litigation.

---

[5] Against this backdrop, it is misleading for Defendant to suggest that the facts here are "akin" to those presented in *NSI Corp.* (Defendant's Reply Br. at 1.) As discussed above, the plaintiff in that case brought suit just one day after mailing a settlement proposal to the defendant, thus leading the defendant to "believe that settlement negotiations were in progress." *NSI Corp.,* 843 F. Supp. at 645. Here, in contrast, it was **Defendant** that made a settlement offer to **Plaintiff** shortly before this suit was commenced, with counsel for Defendant stating in an accompanying e-mail that Plaintiff's most recent settlement proposal was "not acceptable" and "a non-starter." (Defendant's Motion, Ex. J, 8/13/2013 E-mail.) Although Defendant might have hoped that Plaintiff might accept this latest offer — despite its apparent inclusion of terms that Plaintiff had previously rejected — or that this offer might at least form the basis for further settlement discussions, nothing in the record here could be viewed as a misleading assurance by Plaintiff, following his receipt of Defendant's final offer prior to the commencement of this suit, that he remained committed to settlement talks as a viable and preferable alternative to litigation.

Indeed, the courts have deemed it appropriate to adhere to the first-to-file rule in cases "where the plaintiff filed [a] declaratory action justifiably believing that further settlement negotiations would be fruitless." *Kmart Corp.,* 877 F. Supp. at 1054. In *Kmart Corp.* itself, for instance, the court found that the written correspondence received by plaintiff Kmart from defendant Key Industries gave rise to Kmart's "justifiabl[e] belie[f]" that "Key would accept no settlement short of total capitulation," and the court therefore declined to "disturb the choice of forum of the party [Kmart] that filed the first complaint." 877 F. Supp. at 1054-55. Similarly, in *McKee Foods Kingman v. Kellogg Co.,* 474 F. Supp.2d 934, 941 (E.D. Tenn. 2006), the court held that the plaintiffs had not misled the defendant into believing that settlement negotiations remained ongoing at the time the plaintiffs commenced their declaratory judgment action, where the plaintiffs' counsel sent a letter the day before the suit was filed that "plainly rejected Defendant's demands." Because the parties here likewise stood on "equal footing" once each had considered the other's latest settlement proposal and found it wanting, and because neither side provided any assurance that it would continue settlement talks indefinitely in lieu of litigation, Defendant has failed to demonstrate that Plaintiff "unfairly took advantage of" Defendant in the parties' "race to the courthouse," *see NSI Corp.,* 843 F. Supp. at 645, such that the Court should depart from the usual first-to-file rule. *See also Plating Resources, Inc. v. UTI Corp.,* 47 F. Supp.2d 899, 904 (N.D. Ohio 1999) (reasoning that because "negotiations to resolve this dispute were underway before the

12

parties filed these actions, either party was in a position to file suit 'before the other,'" and concluding that this "chronology of . . . events favors applying the first-to-file rule").

Next, Defendant points to cases recognizing the concern that a declaratory judgment action may be "brought for procedural fencing purposes," *NGS American, Inc. v. Jefferson,* 218 F.3d 519, 522 (6th Cir. 2000), and therefore expressing a greater willingness to dismiss such an action in favor of a later-filed coercive suit. *See, e.g., AmSouth Bank,* 386 F.3d at 786 ("Normally, when a putative tortfeasor sues an injured party for a declaration of nonliability, courts will decline to hear the action in favor of a subsequently-filed coercive action by the 'natural plaintiff.'"); *Zide Sport Shop,* 16 F. App'x at 437 (emphasizing that "[a] plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing"); *Hyatt International Corp. v. Coco,* 302 F.3d 707, 712 (7th Cir. 2002) (observing that "the Declaratory Judgment Act is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse" (internal quotation marks and citation omitted)). Nonetheless, this consideration does not completely displace the usual first-to-file rule; as stated by the court in *Kmart Corp.,* 877 F. Supp. at 1053, "[a]bsent special circumstances, when there are two competing lawsuits, the first filed has priority," and "[t]his is true even if the first action is a declaratory action."

Under the facts and circumstances leading up to the parties' filings here, the Court

finds that the risk of "procedural fencing" inherent in a declaratory judgment action is not especially strong in this case, and thus does not warrant a departure from the first-to-file rule. Most significantly, while the first count of Plaintiff's complaint seeks declaratory relief, this pleading includes two additional counts asserting claims of defamation and tortious interference. Consequently, this case is not a "pure" declaratory judgment action, but instead features some characteristics of a coercive suit in which Plaintiff, as the injured party, would be viewed as the "natural" plaintiff. Even as to the parties' dispute over the RPA signed by Plaintiff in connection with his employment with Defendant, both parties' claims in their respective suits call for interpretation of the relevant provisions of the RPA and a determination whether Plaintiff's conduct with his current employer, Crypton, constitutes a breach of these provisions. Against this backdrop, Defendant cannot make a particularly compelling claim to be the more "natural" plaintiff, as each side stands on relatively equal footing in seeking a judicial determination as to whether the terms of the RPA have been breached. Accordingly, the Court declines to exercise its discretion to deviate from the usual first-to-file rule.

**B.      Defendant Has Failed to Establish a Basis for a Transfer of Venue Under 28 U.S.C. 1404(a).**

Under 28 U.S.C. § 1404(a), this Court may transfer this action "to any other district or division where it might have been brought" in order to serve "the convenience of parties and witnesses" and "the interest of justice." As an alternative to seeking the outright dismissal of this suit in favor of the parallel action pending in the Western

District of Pennsylvania, Defendant asserts that this case should be transferred to the Western District of Pennsylvania as "a more convenient forum." (Defendant's Motion, Br. in Support at 12.) Yet, Defendant's "argument" in support of this request for a transfer of venue consists of a single paragraph asserting in wholly conclusory fashion (i) that at least some witnesses with personal knowledge of the facts surrounding Plaintiff's negotiation of his employment agreement with Defendant are located in Pennsylvania, and (ii) that this employment agreement "was entered into in Pennsylvania and governed by Pennsylvania law." (*Id.*) Notably absent from this argument is any discussion of the relevant factors governing a transfer of venue under § 1404(a), *see Audi AG v. D'Amato,* 341 F. Supp.2d 734, 749 (E.D. Mich. 2004), or any citation to any record support whatsoever for Defendant's bare assertions as to the location of (some) witnesses and the places where (some) pertinent events occurred. "It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived." *Dillery v. City of Sandusky,* 398 F.3d 562, 569 (6th Cir. 2005) (internal quotation marks and citations omitted).

In any event, Plaintiff correctly observes in his response to Defendant's motion that a number of considerations militate against a transfer of venue under § 1404(a). First, a plaintiff's choice of forum generally is entitled to "substantial deference," and Defendant has not even attempted to meet its burden of identifying factors that overcome this deference and "strongly favor" a transfer to Defendant's preferred forum. *Audi AG,*

341 F. Supp.2d at 749-50 (internal quotation marks and citation omitted).  Next, Plaintiff notes that any alleged breach of his employment agreement with Defendant necessarily occurred in Michigan, by virtue of actions taken by Plaintiff since he began working for Crypton, a Michigan-based firm.  Moreover, the tort claims asserted in Plaintiff's complaint arise from injuries Defendant allegedly inflicted upon Plaintiff as he has worked for his current Michigan-based employer.  Thus, it is by no means clear that the relevant witnesses in this case are predominantly located in Pennsylvania, such that this case could be litigated "most expeditiously and inexpensively" in Pennsylvania.  *Audi AG,* 341 F. Supp.2d at 749.  Consequently, even if Defendant had not waived the issue, the Court could not say that Defendant has met its burden under § 1404(a) of establishing that the transfer of this case to the Western District of Pennsylvania would serve the convenience of the parties and witnesses and the interests of justice.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's September 24, 2013 motion to dismiss or transfer venue (docket #9) is DENIED. IT IS FURTHER ORDERED that Plaintiff's September 6, 2013 motion to enjoin later-filed proceedings (docket #4) is DENIED AS MOOT, and that Plaintiff's September 6, 2013 motion for an expedited briefing schedule (docket #5) likewise is DENIED AS MOOT.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: August 15, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 15, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135